**Ricky SALISBURY et al., Plaintiffs,**

v.

**PURDUE PHARMA, L.P. et al., Defendants.**

**No. CIV.A. 01–241–JMH.**

United States District Court, E.D. Kentucky, Pikeville Division.

Oct. 12, 2001.

Ira Branham, Branham & Carter, P.S.C., Pikeville, KY, Gary L. Gardner, C. David Ewing, Damon Willis, Gardner, Ewing & Souza, Louisville, KY, for plaintiffs.

John M. Famularo, III, Daniel E. Danford, Stites & Harbison, Lexington, KY, for Purdue Pharma L.P., Purdue Pharma, Inc., Purdue Frederick Company, Purdue Pharmaceuticals L.P., P.F. Laboratories, Inc., and PRA Holdings, Inc.

Keith Moorman, Susan J. Mohler, Frost Brown Todd LLC, Lexington, KY, Maria F. Howell, Paul F. Strain, Venable, Baetjer & Howard, Baltimore, MD, M. King Hill, III, Venable, Baetjer & Howard, LLP, Towson, MD, for Abbott Laboratories.

Ronald L. Green, Boehl, Stopher & Graves, Lexington, KY, for Total Pharmacy Care.

### MEMORANDUM OPINION AND ORDER

HOOD, District Judge.

This matter is before the Court on plaintiff's motion to remand [Record No. 13]. Defendants having responded [Record

Nos. 19 & 20] and plaintiff having replied [Record No. 22], this matter is ripe for review.

## Factual Background

This dispute is in the nature of a products liability action, the thrust of plaintiff's complaint being that defendants bear legal responsibility for the manufacture and distribution of OxyContin, a schedule II narcotic drug. Plaintiffs assert no less than ten (10) causes of action: (1) negligence, (2) failure to warn, (3) violation of Kentucky's Consumer Protection Act (K.R.S. § 367.010 et seq.), (4) conspiracy, (5) breach of express warranty, (6) breach of implied warranty, (7) fraud, (8) unjust enrichment, (9) public nuisance, and (10) medical monitoring.[1] Plaintiffs also seek punitive damages. Plaintiffs' suit assumes the form of a class action under Ky. R. Civ. P. 23, and plaintiffs' complaint identifies three separate classes on behalf of whom relief, both legal and equitable, is sought. Plaintiffs bring suit against eleven (11) defendants, a group consisting of nine (9) "drug company" defendants and two (2) "pharmacy defendants", Total Pharmacy Care and RA Discount Pharmacy. This subclassification is helpful in resolving the jurisdictional question that the instant motion presents.

Plaintiffs' motion to remand is grounded in the argument that this Court lacks subject matter jurisdiction. More specifically, plaintiffs argue that because the parties are not completely diverse the Court lacks jurisdiction under 28 U.S.C. § 1332, and that because there is no federal question presented, jurisdiction is also improper under 28 U.S.C. § 1331. Defendants counter that this Court does have subject matter jurisdiction. Defendants' argument in support of subject matter jurisdiction is predicated on the doctrine of "fraudulent joinder", or, alternatively, federal preemption.

Because the Court finds that defendant pharmacy companies, both citizens of Kentucky, were fraudulently joined, the Court does not reach defendants' preemption argument. The Court has subject matter jurisdiction under 28 U.S.C. § 1332.

## Standard of Review

■ The test in fraudulent joinder cases was recently discussed by the Sixth Circuit in *Jerome–Duncan, Inc. v. Auto–By–Tel, L.L.C.*, 176 F.3d 904 (6th Cir.1999). There, the court noted that the doctrine of fraudulent joinder is applicable in three situations: (1) when there is no colorable basis for a claim against the non-diverse defendant, (2) when a plaintiff engages in outright fraud in pleading jurisdictional allegations, and (3) when the plaintiff joins a defendant who has no joint, several, or alternative liability with a diverse defendant (and there is no nexus between the claims against the diverse and non-diverse defendant). *Id.* Because defendants do not allege outright fraud in plaintiffs' jurisdictional pleadings, application of the doctrine of fraudulent joinder (and, by implication, remand) is proper only upon a showing that there exists no colorable claim against the non-diverse defendants (in the instant case, the pharmacy defendants), or upon a showing that there exists no joint, several, or alternative liability between the non-diverse (the pharmacy companies) and diverse (the drug companies) defendants.

■ The question, then, is "whether there is arguably a reasonable basis for predicting that state law might impose liability on the facts involved." *Alexander v. Electronic Data Systems Corp.*, 13 F.3d

---

**1.** Plaintiffs' complaint lists eleven (11) counts, the last styled "Punitive Damages". This is not a separate cause of action, however, but rather a special remedy.

940, 949 (6th Cir.1994). Put differently, "[f]raudulent joinder arises when the removing parties ... present sufficient evidence that [plaintiff] could not have established a cause of action against nondiverse defendants under state law." *Sprowls v. Oakwood Mobile Homes, Inc.,* 119 F.Supp.2d 694, 695–96 (W.D.Ky.2000)(quoting *Coyne v. American Tobacco Co.,* 183 F.3d 488 (6th Cir.1999)). The Sixth Circuit has reaffirmed that the removing party faces a considerable burden in proving fraudulent joinder, making clear that "the removing party bears the burden of demonstrating fraudulent joinder", *Alexander,* 13 F.3d at 948–49, and that "any disputed questions and fact ambiguities in the controlling state law should be resolved in favor of the nonremoving party." *Id.* (quoting *Carriere v. Sears Roebuck & Co.,* 893 F.2d 98, 100 (5th Cir. 1990)).

## Analysis

 Ordinarily, the question of fraudulent joinder would require that the Court inspect each of plaintiffs' theories of relief, determining under each count whether plaintiffs state a colorable cause of action under state law. In the context of the instant suit, however, this is unnecessary, as plaintiffs' complaint—at least with respect to the (non-diverse) pharmacy defendants—suffers from a fatal flaw. That flaw is the omission of any averment to the effect that defendant pharmacies sold or supplied OxyContin *to plaintiffs.* Absent such an allegation, of course, plaintiffs' complaint does not link plaintiffs' alleged injuries with the action (or inaction) of defendant pharmacies. Viewed in this manner, plaintiffs' complaint states no cause of action against defendant pharmacies. Under the standard as outlined above, then, defendant pharmacies have been fraudulently joined.

The significance of omitting any allegation that defendant pharmaceutical companies sold or supplied *to plaintiffs* the allegedly defective and unreasonably dangerous drug was illustrated perfectly by the United States District Court for the Southern District of New York in *In re Rezulin Products Liability Litigation,* 133 F.Supp.2d 272 (S.D.N.Y.2001). In *In re Rezulin,* a consolidation of sixteen (16) actions seeking recovery for personal injuries allegedly resulting from the use of the prescription diabetes medication Rezulin, the Judicial Panel on Multidistrict Litigation was presented with the precise question faced in the instant case: Do plaintiffs state a colorable cause of action versus non-diverse defendant pharmacies such that joiner of the defendant pharmacies is not fraudulent? The Multidistrict Panel in *In re Rezulin* answered in the negative, holding that under the state law of Mississippi, Alabama, Louisiana, Texas, and West Virginia the defendant pharmacies could not be liable under failure to warn, breach of express warranty, breach of implied warranty, or strict liability theories. *Id.*

Discussing the defendant pharmacies' liability under Mississippi law, the Multidistrict Panel identified a specific case (amongst the ones it was to decide), *Armstrong v. Warner–Lambert Co.,* as suffering from an especially problematic defect. Specifically, the court noted:

> *Armstrong* suffers from an added defect. Plaintiffs there make no allegations specifically against the defendant pharmacies, but instead lump them together with the manufacturers and attribute the acts alleged ... to the "defendants" generally. But they do not connect themselves to any alleged acts of the pharmacy defendants. Under any of the theories proffered in *Armstrong,* the complaint must allege that the defendant pharmacies sold or supplied Re-

zulin *to plaintiffs.* Without drawing that connection, plaintiffs have no way of showing that the pharmacy defendants' acts proximately caused the alleged injuries. Accordingly, the *Armstrong* defendants improperly joined the pharmacies as defendants.

*In re Rezulin Litigation,* 133 F.Supp.2d 272, 291 (S.D.N.Y.2001).

The instant case presents precisely the same scenario. As was the case in *Armstrong,* plaintiffs in the instant action do not, in large measure, single out the pharmacy defendants, nor do they describe with any degree of factual specificity the conduct giving rise to this suit. To the contrary, pharmacy defendants merit but one reference in plaintiffs' entire thirty-four (34) page complaint. Although plaintiffs' complaint commonly employs the generic term "defendants", the context and nature of the individual allegations·make clear that only the drug companies are targeted. The lone statement even approximating a charge against the pharmacy defendants appears on page fifteen (15). There, paragraph sixty-five (65) alleges that "[p]harmacy [d]efendants inappropriately distributed and recommended Oxy-Contin to residents of Pike County, Kentucky." [Record No. 1]. While this may indeed be true, plaintiff does not allege that any of the proposed representative plaintiffs themselves (or, for that matter, any members of the proposed Rule 23 classes) purchased or were otherwise supplied OxyContin *by the defendant pharmacies.* As was the case in the Rezulin litigation, this omission is fatal: absent such an averment "plaintiffs have no way of showing that the pharmacy defendants' acts proximately caused the alleged injuries." *Id.* Defendant pharmacies were improperly joined.

This result must obtain, as plaintiffs cannot have it both ways. On the one hand, plaintiffs' successful joinder of the pharmacy defendants would defeat this Court's diversity jurisdiction, a jurisdictional resolution presumably desired by plaintiffs. On the other hand, however, plaintiffs propose plaintiff classes comprised of "[a]ll persons in the State of Kentucky." Plaintiffs' joinder of the pharmacy defendants is by definition limiting, however, and in effect would limit the plaintiff classes to "[a]ll persons in the State of Kentucky" who bought or were supplied OxyContin *by the two named defendant pharmacies.* In other words, plaintiffs' complaint as presently styled is internally inconsistent: plaintiffs cannot purport to represent "[a]ll persons in the State of Kentucky" who have allegedly been injured by OxyContin while at the same time limit that class to only those who purchased from or were supplied by the two named pharmacy defendants. Plaintiffs cannot have their cake and eat it too: they cannot both represent as large a class as they apparently desire to represent and at the same time join the two pharmacy defendants to achieve the desired jurisdictional result.

■ Assuming, for the sake of argument, that plaintiffs' complaint may be somehow construed as suggesting that defendant pharmacies sold or supplied Oxy-Contin *to plaintiffs,* the conclusion does not change. This is the case because K.R.S. § 411.340—Kentucky's so-called "middleman" statute—bars plaintiffs from recovering against the defendant pharmacies. Section 411.340 reads in full:

WHEN WHOLESALER, DISTRIBUTOR OR RETAILER TO BE HELD LIABLE

In any product liability action, if the manufacturer is identified and subject to the jurisdiction of the court, a wholesaler, distributor, or retailer who distributes or sells a product, upon his showing

by a preponderance of the evidence that said product was sold by him in its original manufactured condition or package, or in the same condition such product was in when received by said wholesaler, distributor or retailer, shall not be liable to the plaintiff for damages arising solely from the distribution or sale of such product, unless such wholesaler, distributor or retailer, breached an express warranty or knew or should have known at the time of distribution or sale of such product that the product was in a defective condition, unreasonably dangerous to the user or consumer.

K.R.S. § 411.340.

The middleman statute is applicable in the case at bar because the statute's predicates are present and the exceptions inapplicable. As for the requisite predicates, there are two: (1) the manufacturer must be identified and subject to the Court's jurisdiction, and (2) the product sold by the wholesaler, distributor or retailer must have been unaltered from its original manufactured condition. As for the exceptions, the statute makes clear that its protective shield is inapplicable in two instances: (1) where the wholesaler, distributor or retailer breached an express warranty, or (2) where the wholesaler, distributor or retailer knew or should have known at the time of distribution or sale that the product was in a defective condition and unreasonably dangerous. Unquestionably, both predicates for application of the statute are present in the case at bar: the OxyContin manufacturers are both identified (labeled in plaintiffs' complaint as the drug company defendants) and subject to the jurisdiction of the Court, and plaintiffs' do not allege that the defendant pharmacies sold the OxyContin in an altered condition. The statute, then, is applicable in the instant case. The more difficult question, however-

er, is whether the instant case fits into one of the two (2) statutory exceptions.

The second exception—applicable if the defendant pharmacy companies knew or should have known that the OxyContin prescriptions that they were filling were in a defective condition, unreasonably dangerous—may be disposed of summarily. Plaintiffs simply do not allege that the defendant pharmacy companies knew or should have known that the product was defective. In fact—and as discussed above—plaintiffs' sole reference to the pharmacy defendants alleges mere inappropriate distribution and recommendation. Such a broad and cursory allegation is a far cry from alleging actual or constructive knowledge, however.

Given that plaintiffs do allege breach of express warranty, the applicability of the first exception is a somewhat more interesting question. The question reduces to this: Under Kentucky law, where pharmacies do no more than properly fill prescriptions for prescribed drugs as indicated by the prescribing physician, does there exist a cause of action against pharmacies for breach of express warranty? Though a question of first impression in Kentucky, the overwhelming majority of states have answered in the negative. Indeed, there appears to have emerged a clear national consensus on this issue. Whether based on principles of public policy, statutory construction, or otherwise, "almost every state that has considered the issue has declined to find pharmacists liable for breach of either implied or express warranty with respect to properties of prescription drugs." *In re Rezulin Litigation*, 133 F.Supp.2d 272, 292 (S.D.N.Y. 2001). For this reason and for the reasons outlined below, the Court believes that Kentucky would adopt the sound position of these fellow jurisdictions.

In the final analysis, however, it matters not whether Kentucky would recognize a cause of action against the pharmacy companies for breach of express warranty, for plaintiffs' complaint falls short of stating such a claim. For one, plaintiffs provide no indication at all as to what language they assert to amount to an express warranty. What's more, they do not aver that the pharmacy defendants, and not the drug defendants, provided the alleged warranty. Most critically, however, plaintiffs do not allege that they relied on defendants' warranty, proof of which is a fundamental requirement for recovery under any express warranty theory. As articulated in the Rezulin litigation, under the Uniform Commercial Code's express warranty provision (2–313) " 'the basis of the bargain' element requires a buyer to show that he or she relied upon the seller's representations when deciding whether to purchase the goods." *Id.* at 291. Absent any allegation of reliance, plaintiffs have no claim for breach of express warranty.[2]

### Conclusion

Plaintiffs' complaint fails to connect the defendant pharmacies with plaintiffs' acquisition of OxyContin. Absent such an allegation, plaintiffs cannot establish proximate cause and their claim against the pharmacies fails as a matter of law. Because plaintiffs have no claim against the defendant pharmacies, joinder is fraudulent and this Court has subject matter jurisdiction under 28 U.S.C. § 1332.

Even if plaintiffs' complaint could be construed as alleging that defendant pharmacies sold or otherwise provided OxyContin to plaintiffs, joinder is nonetheless fraudulent. This is so because Kentucky's "middleman" statute bars recovery.

**2.** In *In re Rezulin Litigation,* the United States District Court for the Southern District of New York applied Mississippi's version of UCC § 2–313. Because the Mississippi and Kentucky versions are identical, however, the court's analysis is still applicable to the instant case. *Compare* Miss.Code Ann. § 75–2–323(1)(a), *with* K.R.S. § 355.2–313.

Accordingly,

**IT IS HEREBY ORDERED**

(1) that plaintiffs' motion to remand [Record No. 13] be, and hereby is, **DENIED**; and

(2) that defendant Abbot Laboratories motion for oral argument [Record No. 20] be, and hereby is, **DENIED AS MOOT**.