Raymond G. CORDLE, Plaintiff,

v.

MERCK & CO., INC., et al. Defendants.

No. CIV.A.0:05–191–JMH.

United States District Court,
E.D. Kentucky,
Ashland.

Dec. 22, 2005.

Ann B. Oldfather, Oldfather & Morris, Beverly J. Glascock, Bubalo & Hiestand, PLC, D. Brian Rattliff, Bubalo & Hiestand, PLC, Gregory J. Bubalo, Bubalo & Hiestand, PLC, Tyler S. Thompson, Dolt, Thompson, Shepherd & Kinney, Louisville, KY, for Raymond G. Cordle, Virginia A. Cordle Spouse, Robert Earl Cordle a dis-

abled adult, through his father Next Friend Raymond G. Cordle, Plaintiffs.

John Allan Combs, Frost Brown Todd LLC—Lexington, Susan J. Pope, Frost Brown Todd LLC, Lexington, KY, Winston E. Miller, Frost Brown Todd LLC, Louisville, KY, David O. Welch, Welch Law Office, Ashland, KY, for Merck & Co., Inc., John Doe One, John Doe Two, M.D. John H. Darnell, Jr., Family Medicine Center, PLLC, Defendants.

## ORDER

HOOD, District Judge.

This matter is before the Court on the above-named Plaintiff's motion to remand this case to state court. This case arises out of harm to Plaintiff allegedly caused by Vioxx, and the complaint alleges product liability claims against Merck and negligence claims against the physician who prescribed Vioxx to Plaintiff.[1] All responses and replies having been filed, this matter is now ripe for review.

## I. BACKGROUND

### A. Procedural Background

Plaintiff filed this action in Boyd Circuit Court, and Defendant Merck removed it, claiming that the Court has subject matter jurisdiction based on diversity. *See* 28 U.S.C. § 1441(a); 28 U.S.C. § 1332(a). Plaintiff is a citizen of Kentucky, Merck is a citizen of New Jersey under 28 U.S.C. § 1332(b), and the amount in controversy exceeds the jurisdictional minimum. The physician is a citizen of Kentucky, and thus according to Plaintiff the presence of doctor as a defendant destroys diversity. Merck contends that the physician was fraudulently joined solely for the purposes of avoiding federal jurisdiction.

### B. The Claims Against Merck

Plaintiff makes a number of allegations in his complaint, most of which are directed at Merck. Plaintiff alleges that Merck actively concealed the cardiovascular risks of Vioxx from both the medical community and the public at large, and they include a "Vioxx Timeline" that describes the relevant studies, articles, and FDA actions regarding Vioxx. According to the complaint, even before Vioxx was approved, there were both human and animal studies indicating that COX-2 inhibitors increase cardiovascular risks. In March of 2000, Merck revealed the initial results of the Vioxx Gastrointestinal Outcomes Research (the "VIGOR" study), which showed that Vioxx had twice the rate of serious cardiovascular events as a comparator drug, Naproxen.[2]

In January of 2001, an FDA advisory panel recommended that Merck change the labeling on Vioxx to reflect the cardiovascular risk, a step that Merck took in April of 2002. In the interim, the Journal of the American Medical Association had published a study again showing an increase in cardiovascular risk as compared to Naproxen; and a number of healthcare providers asked Merck to conduct tests on

---

1. This case also includes a claim against the physician's employer, but as that claim is entirely derivative of the claim against the physician, it need not be considered separately. In addition, Plaintiff makes claims against drug representatives named as John Does. These fictitious defendants will be disregarded for purposes of this motion.

2. The complaint does not reveal to whom or in what medium these initial results were revealed. Plaintiff also alleges that when the final results of the VIGOR study appeared in the New England Journal of Medicine, Merck failed to disclose the cardiovascular risk. Although the circumstances of the initial release of data are unclear, at this stage all ambiguities must be resolved in favor of Plaintiff, as further discussed below.

the cardiovascular risks associated with Vioxx. Eventually, in September of 2004, Merck pulled Vioxx from the market.

Plaintiff asserts that throughout this process Merck both concealed and actively misrepresented the true dangers of Vioxx. The claims asserted against Merck include negligence, strict liability, failure to warn, false advertising, and breach of various warranties.

### C. The Claim Against the Physician

The claim against the physician is a negligence claim. Plaintiff incorporates the history of the emerging knowledge of the dangers of Vioxx and claims that the physician knew or should have known of the cardiovascular risks, failed to adequately consider those risks, and failed to obtain informed consent. Other than the facts that the physician prescribed Vioxx to Plaintiff, the only allegations supporting the claims against the physician are the history of the public knowledge of the dangers of Vioxx. Plaintiff argues that this is sufficient to state a claim that the physician knew or should have known of the dangers of Vioxx.

## II. ANALYSIS

### A. Fraudulent Joinder

■ A case can only be removed if it could have been originally brought in federal court, and as there is no federal question, jurisdiction is only proper if the parties are completely diverse and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1441(a); 28 U.S.C. § 1332. "[A] party seeking to bring a case into federal court carries the burden of establishing diversity jurisdiction." *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir.1999) (internal quotation marks omitted).

■ The only issue is whether the non-diverse physician was fraudulently joined.[3] The burden is on Merck to show fraudulent joinder, and as with any dispute over removal, all doubts are to be resolved against removal. *See Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 534 (6th Cir.1999); *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir.1994). "To prove fraudulent joinder, the removing party must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law." *Coyne*, 183 F.3d at 493.

The Sixth Circuit has held that "if there is a colorable basis for predicting that a plaintiff *may* recover against non-diverse defendants, th[e] Court *must remand* the action to state court." *Id.* (emphasis added); *see also Jerome–Duncan, Inc. v. Auto–By–Tel, L.L.C.*, 176 F.3d 904, 907 (6th Cir.1999) ("[T]he inquiry is whether [plaintiff] had at least a colorable cause of action."). Any ambiguities in the relevant state law must be taken in the light most favorable to Plaintiff. *See Alexander*, 13 F.3d at 949. Thus, the question before the Court is not whether Plaintiff will prevail at trial on his claim against the physician.

---

**3.** Plaintiff also argues that removal was defective because Merck failed to obtain the consent of all defendants to removal. While the statutes authorizing removal do not explicitly state that removal can be effected only with the consent of all defendants, the case law is clear that all named defendants must either join in the notice of removal or file notices demonstrating consent to removal. *See, e.g., Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 533–34 (6th Cir.1999). However, a removing defendant need not obtain the consent of parties who are fraudulently joined. *See Constant v. Wyeth*, 352 F.Supp.2d 847, 849 (M.D.Tenn.2003). Accordingly, whether removal was defective based on a lack of consent is entirely dependent on whether the non-diverse physician was fraudulently joined, and it need not be addressed separately.

The question is not even whether the Court believes that the physician was in fact joined to defeat diversity. *See Jerome–Duncan,* 176 F.3d at 907 (holding that a plaintiff's motive in joining a non-diverse defendant is "immaterial to our determination regarding fraudulent joinder"). The question is whether, resolving all ambiguities in favor of Plaintiff, Merck has shown that there is no colorable basis for predicting that Plaintiff could prevail in state court.

Several courts have noted that the standard for a defendant to show fraudulent joinder is even higher than the standard for succeeding on a motion to dismiss under Rule 12(b)(6). *See Little v. Purdue Pharma, L.P.,* 227 F.Supp.2d 838, 845–46 (S.D.Ohio 2002) (citing *Batoff v. State Farm Ins. Co.,* 977 F.2d 848 (3d Cir.1992); *Hartley v. CSX Transp., Inc.,* 187 F.3d 422 (4th Cir.1999)). As the Third Circuit has noted, "it is possible that a party is not fraudulently joined, but that the claim against that party ultimately is dismissed for failure to state a claim upon which relief may be granted." *Batoff,* 977 F.2d at 852. "[T]he benefit of the doubt given a plaintiff as part of the fraudulent joinder inquiry should be more deferential than even that given under Rule 12(b)(6). . . . [A] decision overruling a motion for remand where the defendant is claiming fraudulent joinder connotes that a plaintiff's claim, as to the non-diverse defendants, has no basis in law or reason." *Little,* 227 F.Supp.2d at 846–47; *see also Batoff,* 977 F.2d at 852 (holding that a party is not fraudulently joined if the

claims against them are not "wholly insubstantial and frivolous").

Merck makes two principal arguments in support of fraudulent joinder. First, Merck argues that Plaintiff's claims against the physician are wholly conclusory. Second, Merck argues that Plaintiff's claims against the physician are inconsistent with his allegations against Merck. As the fraudulent joinder inquiry depends on whether Plaintiff has stated a colorable claim against the non-diverse defendants in state court, *see Coyne,* 183 F.3d at 493, the Court must assess the complaint in light of Kentucky law, and to this the Court now turns.[4]

### B. Conclusory Pleadings

It is no doubt true, as Merck points out, that the complaint is long on allegations of wrongdoing by Merck and short on allegations against the physician. From this fact Merck would have the Court draw the conclusion that the complaint is so deficient and conclusory that the physician must be fraudulently joined. Therefore, the Court must determine whether the complaint states sufficient facts to sustain a claim against the doctors under Kentucky law.

"The elements of a medical malpractice claim are generally: (1) duty; (2) breach of duty; (3) causation; and (4) injury." *Gordon v. Kemper,* 2005 WL 678535 at *2 (Ky.App. Mar. 25, 2005); *see also Wheeler v. Baptist Healthcare Sys., Inc.,* 14 Fed.Appx. 559 (6th Cir.2001). A physician has a duty to use the same degree of care and skill as would be expected

---

**4.** There is a pending motion to stay, and Merck has argued that the issue of fraudulent joinder should be determined after transfer to MDL. However, as the determination of whether the physician has been fraudulently joined depends on whether Plaintiff has stated a claim under state law, *see Coyne,* 183 F.3d at 493, the MDL court would have to make fifty separate determinations. Although courts have gone both ways on this issue, this Court believes that it is in the interest of efficiency to rule on the motion to remand before transfer.

of a reasonably competent physician in similar circumstances. *See Mitchell v. Hadl,* 816 S.W.2d 183, 185 (Ky.1991). Kentucky recognizes a physician's failure to obtain informed consent as an actionable form of negligence. *See Hawkins v. Rosenbloom,* 17 S.W.3d 116, 118–19 (Ky. App.1999).

Plaintiff's complaint alleges that the cardiovascular risks associated with COX–2 inhibitors had been shown in both human and animal studies before Vioxx's approval, and that public information about the cardiovascular risks of Vioxx came out, notwithstanding Merck's attempts to conceal the risks, from March of 2000 through the time Vioxx was pulled from the market in September of 2004. According to Plaintiff, this means that at least at some point during this period, the physician knew or should have known of the risks of Vioxx and should have disclosed the risks to Plaintiff. Plaintiff alleges that the physician prescribed Vioxx and that this was a proximate cause of the harm.

Kentucky's Civil Rules, like the Federal Rules of Civil Procedure, require only that a plaintiff state a claim with sufficient specificity so that defendants receive fair notice of the claims against them. As the Kentucky Court of Appeals explained, "[u]nder the theory of 'notice' pleading adopted by the Civil Rules a complaint will not be dismissed for failure to state a claim unless it appears to a certainty that the plaintiff would not be entitled to relief under any state of facts which could be proved in support of his claim. *It is immaterial whether the complaint states 'conclusions' or 'facts' as long as fair notice is given."* *Pierson Trapp Co. v. Peak,* 340 S.W.2d 456, 460 (Ky.1960) (emphasis added and internal citations omitted); *see also Morris v. Cabinet for Families & Children,* 69 S.W.3d 73, 74 (Ky.2002) ("The principal objective of a pleading is to give

fair notice to the opposing party."). "[T]he Rules of Civil Procedure with respect to stating a cause of action should be liberally construed and ... much leniency should be shown in construing whether a complaint ... states a cause of action." *Smith v. Isaacs,* 777 S.W.2d 912, 915 (Ky.1989).

■ Vague and conclusory though Plaintiff's allegations may be, Plaintiff has met the standard required for pleading negligence. Plaintiff has alleged a breach of the physician's duty by failing to know, failing to consider, and failing to inform Plaintiff of the risks of Vioxx as a reasonable physician would have. Plaintiff has alleged that he was injured and that this injury was caused in part by his physician's failure to meet his duty.

There are sufficient facts alleged such that the physician would have fair notice of the claim against him and be able to frame an answer. The physician could answer by stating that he was unaware of the dangers and that a reasonable physician would not have encountered the information described in the complaint until after harm had already befallen their patients. The physician might even be right, but what a reasonable physician would have known is surely a matter for the jury and not a matter for the Court on a motion to remand. As the complaint gives the physician fair notice of the claims against him, the complaint will not be held insufficient merely because its allegations are phrased largely as conclusions rather than as facts. *See Pierson Trapp Co.,* 340 S.W.2d at 460.

Moreover, even if the Court believed that the complaint against the physician was too conclusory to state a claim, there is a remedy short of finding fraudulent joinder. As Judge Caldwell recently recognized in a well-reasoned opinion rejecting allegations of fraudulent joinder, if a complaint is too vague a defendant's remedy is to seek a more definite statement.

See *Asher v. Minn. Mining & Mfg. Co.*, No–04–CV–522, 2005 WL 1593941, at *3 (E.D.Ky. June 30, 2005). In *Asher*, a defendant argued that the complaint lacked specificity in its claims against the non-diverse defendants and therefore that those defendants were fraudulently joined. Judge Caldwell rejected that argument, holding that "[t]he Defendants' proper recourse under Kentucky state law ... would be to request a more definite statement under CR 12.05. The Complaint would not be dismissed because of the alleged deficiencies."[5] *Id.; see also Little*, 227 F.Supp.2d at 843 (remanding suit against drug manufacturer and non-diverse pharmacies even though "[t]he pleadings are general in their nature; the specifics few").

The Court cannot find that the allegations are so bereft of factual underpinnings that the physician is fraudulently joined. Reading the complaint in the light most favorable to Plaintiff, the allegations include facts that go to duty, breach, harm, and causation, and the Court believes that the physician has received fair notice of the claims against him. If the physician feels that the complaint is too conclusory, the remedy is to move for a more definite statement.[6]

## C. Inconsistent Pleadings

Merck also argues that the claim against the physician is inconsistent with the main thrust of the complaint, which is that Merck engaged in a program of concealing the risks of Vioxx from not only the public but from the medical community as well. According to Merck, if it is true that they concealed this information from the physician, then it is impossible that Plaintiff will be able to show that the physician knew or should have known of the risks.

This argument fails for two reasons. First, giving Plaintiff the benefit of all doubts, it is not clear that the allegations against Merck are necessarily inconsistent with the allegations against the physician. It is perfectly plausible that a drug manufacturer could engage in a pattern of concealing information about a drug's risks, and yet that a reasonable physician would still have known of the risks from the information that had come out. Plaintiff alleges that certain information about the risks of Vioxx was publicly known at various times notwithstanding Merck's concealment, and that even aside from specific information about Vioxx, the cardiovascular risks associated with COX–2 inhibitors were known before the approval of Vioxx.

Second, the Kentucky Civil Rules, like the Federal Rules, allow alternative or inconsistent pleadings: "A party may ... state as many separate claims ... as he has regardless of consistency." Ky. R.

---

5. In a similar fashion, the District Court for the Southern District of Ohio noted, in response to a claim that parties had been fraudulently joined, that a federal court should not deny remand based on factual deficiencies in the pleadings when the plaintiffs would have the opportunity to amend their complaints in state court. *See Little*, 227 F.Supp.2d at 847; Ky. R. Civ. P. 15.01 (following Fed.R.Civ.P. 15(a) and directing that leave to amend "be freely given when justice so requires").

6. Merck has noted that this Court has found fraudulent joinder in somewhat similar cases in the past. *See Sires v. Eli Lilly & Co.*, No.

5:05–117, 2005 WL 1239636 (E.D.Ky. May 24, 2005); *Salisbury v. Purdue Pharma, L.P.*, 166 F.Supp.2d 546 (E.D.Ky.2001). The complaints in those cases, however, were even more deficient than the complaint in this case. In *Sires*, the complaint failed even to allege that the defendant-physician had prescribed the drug at issue in the action, and in *Salisbury* the complaint did not include an allegation that the defendant pharmacies had sold the drug to the plaintiffs. The complaint in this case at least alleges that the physician prescribed Vioxx to Plaintiff.

Civ. P. 8.05(2). Several courts have rejected the argument that it is a fatal flaw for a plaintiff to argue that a drug company withheld information from the medical community and at the same time that a physician should have known of the risks of a particular drug. *See, e.g., Collins v. Bacon,* No. 1:05–CV–211, 2005 WL 2429844 at *3 (E.D.Tenn. Sept. 30, 2005); *Lauderdale v. Merck & Co.,* No. 1:01–CV–418D-B, 2002 WL 449423 at *2–3 (N.D.Miss. Feb. 4, 2002). Although other courts have ruled the other way on this issue, this Court does not find that the partial inconsistency in Plaintiff's complaint means that Plaintiff does not have a colorable claim against the physician in state court.

## III. CONCLUSION

Although the complaint in this case is not a model of clarity, and the bulk of the allegations relate to the conduct of Merck, the Court cannot find that they the complaint is so deficient as to warrant a finding of fraudulent joinder. The burden on a defendant seeking to prove fraudulent joinder is high, and Merck has not met that burden. Plaintiff states a claim against the non-diverse physician that may be colorable in state court, and that is all that Plaintiff must do for his motion to remand to be granted.

Accordingly, and for the foregoing reasons, **IT IS ORDERED** that Plaintiff's motion to remand [Record No. 11] be, and the same hereby is, **GRANTED**; that all other pending motions be, and the same hereby are, **DENIED AS MOOT**; that this action be **REMANDED** to Boyd Circuit Court.