RENDERED: NOVEMBER 10, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1360-MR

DONNA THACKER                                                                                    APPELLANT

v.                            APPEAL FROM PIKE CIRCUIT COURT
                              HONORABLE HOWARD KEITH HALL, JUDGE
                              ACTION NO. 20-CI-01305

PIKEVILLE MEDICAL CENTER,
INC.; ABIGAIL HATFIELD, D.O.;
KENTUCKY EMPLOYERS'
MUTUAL INSURANCE; AND
MICHAEL MCCLAIN, D.O.                                                                            APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: LAMBERT, MAZE, AND TAYLOR, JUDGES.

LAMBERT, JUDGE: Donna Thacker has appealed from the October 19, 2021,
summary judgment of the Pike Circuit Court dismissing, with prejudice, her
medical malpractice claim against Abigail Hatfield, D.O., for damages she
sustained during a procedure while Hatfield was a medical student. We affirm.

Thacker underwent a surgical procedure to her right shoulder at the Pikeville Medical Center (PMC) on September 10, 2019, during which she claimed to have been injured while the general endotracheal anesthesia was being administered. One year later, Thacker filed a complaint in the Pike Circuit Court seeking damages from PMC, Michael McClain, D.O. (Dr. McClain), and Hatfield, who at the time of the procedure was a student at the University of Pikeville's Kentucky College of Osteopathic Medicine. PMC and Dr. McClain moved to dismiss Thacker's complaint pursuant to Kentucky Rules of Civil Procedure (CR) 12.02(f) for her failure to state a cognizable claim or for a more definite statement pursuant to CR 12.05 as the complaint did not contain sufficient factual allegations to support her assertions that any of the defendants could be found negligent. Hatfield joined in this motion. The court denied the motion to dismiss, but it granted the motion for a more definite statement and provided Thacker time to file an amended complaint. She filed the amended complaint on March 30, 2021, alleging that Dr. McClain and Hatfield were responsible for administering the anesthesia and were negligent. Later, Kentucky Employers' Mutual Insurance (KEMI) intervened in Thacker's action to assert a workers' compensation subrogation claim against the defendants.

In August 2021, Hatfield filed a motion for summary judgment, seeking dismissal of Thacker's claims against her. She argued that, because she

was a medical student and was following the instructions and directions of Dr. McClain at the time of the procedure, she was exculpated from any liability. In addition, she stated that she did not owe Thacker a duty of care as a medical student and could not be held to an elevated standard of care. Finally, Hatfield argued that public policy supported not imposing a doctor's duties on medical students as they must be properly trained to successfully perform their jobs. In response, Thacker argued that disputed facts remained to be decided, which would preclude summary judgment.

By order entered October 19, 2021, the circuit court granted Hatfield's motion for summary judgment, concluding that no genuine issues of material fact existed and agreeing with her argument that, in assisting Dr. McClain, Hatfield was "akin to a nurse who assists a doctor during a procedure and follows the doctor's orders[.]" As Thacker had not alleged that Hatfield had deviated from Dr. McClain's orders, the court found that her execution of these orders relieved her from any responsibility or liability in this case, citing *City of Somerset v. Hart*, 549 S.W.2d 814, 817 (Ky. 1977). Therefore, the court dismissed Thacker's and KEMI's claims against Hatfield with prejudice. Thacker's claims against PMC and Dr. McClain remained pending. The court made the summary judgment final and appealable pursuant to CR 54.02(1), and this appeal now follows.

On appeal, Thacker contends that the circuit court improperly entered summary judgment in Hatfield's favor, arguing that it was premature, that some liability attached to Hatfield, and that Hatfield had a duty to her. Hatfield disputes these arguments in her brief.

Our applicable standard of review is set forth in *Patton v. Bickford*, 529 S.W.3d 717, 723 (Ky. 2016):

> Summary judgment is a remedy to be used sparingly, *i.e.* "when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor and against the movant." *Shelton v. Kentucky Easter Seals Society, Inc.*, 413 S.W.3d 901, 905 (Ky. 2013) (citations omitted). We frequently caution, however, the term "impossible" is to be used in a practical sense, not in an absolute sense. *See id.* (citing *Perkins v. Hausladen*, 828 S.W.2d 652, 654 (Ky. 1992)). The trial court's primary directive in this context is to determine whether a genuine issue of material fact exists; if so, summary judgment is improper, *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). This requires that the facts be viewed through a lens most favorable to the party opposing summary judgment, here the Estate. *Id.* It is important to point out that "a party opposing a properly supported summary judgment motion cannot defeat it without presenting at least some affirmative evidence showing that there is a genuine issue of material fact for trial." *Id.* at 482.
>
> A motion for summary judgment presents only questions of law and "a determination of whether a disputed material issue of fact exists." *Shelton*, 413 S.W.3d at 905. Our review is de novo, and we afford no deference to the trial court's decision.

With this standard in mind, we shall consider Thacker's arguments.

For her first argument, Thacker contends that the entry of summary judgment regarding Hatfield's lack of liability was premature because there was no evidence in the record that Dr. McClain had provided the directions or orders that harmed her, or that Dr. McClain was responsible for her injuries or for any of Hatfield's actions. We do not agree with Thacker's assertions regarding the lack of evidence that Hatfield was not acting solely under Dr. McClain's guidance. As Hatfield points out, in his answer to the amended complaint, Dr. McClain admitted that "he was responsible for administering and monitoring the anesthesia to [Thacker] and the care associated therewith." We agree with Hatfield that this constitutes a judicial admission, which causes Thacker's argument that there was no evidence to fail.

> [A] judicial admission is conclusive, in that it removes the proposition in question from the field of disputed issue, and may be defined to be a formal act done in the course of judicial proceedings which waives or dispenses with the necessity of producing evidence by the opponent and bars the party himself from disputing it; and, as a natural consequence, allows the judge to direct the jury to accept the admission as conclusive of the disputed fact.

*Sutherland v. Davis*, 286 Ky. 743, 151 S.W.2d 1021, 1024 (1941). Therefore, we find no merit in Thacker's argument that summary judgment was premature.

Next, Thacker argues that some liability properly attaches to Hatfield, which we shall consider in conjunction with her argument that Hatfield owed a

duty to her.  In order to establish a negligence claim, a plaintiff must prove, "(1) the defendant owed the plaintiff a duty of care, (2) the defendant breached the standard by which his or her duty is measured, and (3) consequent injury. . . . Duty, the first element, presents a question of law." *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88-89 (Ky. 2003) (citing *Mullins v. Commonwealth Life Insurance Co.*, 839 S.W.2d 245, 247-48 (Ky. 1992)).  Thacker asserts that there was insufficient discovery taken to support a finding as to any proportionate share of her liability, that "[m]edical students who are at the point of acting as doctors, under supervision, are typically sued in actions brought by patients for medical negligence or malpractice[,]" that Hatfield was a medical intern or resident at the time the procedure took place, and that, because she had been engaging in patients' medical care, she should be held liable for any harm that she caused if it breached her standard of care.  We disagree.

Rather, we agree with Hatfield's argument that, under Kentucky law, a medical student under the direction of a physician is not independently liable to a patient for medical malpractice.

Hatfield first cites to *Sameuls v. Willis*, 133 Ky. 459, 118 S.W. 339 (1909), a malpractice action brought against a surgeon after a sponge had been left inside of a patient.  The former Court of Appeals indicated that the surgeon had "sent down a trained nurse and followed next day with a medical student as

-6-

assistant." *Id*. at 340. As Hatfield points out, the medical student was not named as a defendant in the action; rather, it was filed against the surgeon.

Hatfield next cites to *City of Somerset v. Hart*, *supra*, another malpractice action, this one arising from a scalpel left in a patient's abdomen after surgery. In this opinion, the Supreme Court of Kentucky discussed whether a hospital employee could be a servant of two masters (an independent physician and the hospital) and recognized an exculpatory doctrine that shielded nurses from liability under certain circumstances:

> We recognize that the nurse's duty to obey such orders exculpates her and her hospital employer from responsibility for the results of the competent execution of the orders, unless the orders are so obviously improper that the ordinarily prudent nurse would not obey them. When exculpation is the result, it is so because the nurse's obedience to the orders does not constitute negligence, and consequently, there is no basis for vicarious liability of the hospital.

549 S.W.2d at 817.

We agree with Hatfield that *Hart* applies in the present case to shield her from liability as she was working under Dr. McClain's direction. Any attempt by Thacker to suggest that Hatfield might have been acting outside of his direction is misguided, as Dr. McClain admitted in his answer that he was responsible for administering and monitoring Thacker's anesthesia. *See Sutherland*, *supra*.

Therefore, Hatfield, as a medical student under Dr. McClain's direction, cannot be held independently liable as a matter of law.

Finally, Hatfield contends that she is precluded from liability based upon Kentucky's definition of "doctor" as set forth in Kentucky Revised Statutes (KRS) Chapter 311. In *Hyman & Armstrong, P.S.C. v. Gunderson*, 279 S.W.3d 93, 113 (Ky. 2008), the Supreme Court explained the duty of care associated with medical malpractice cases:

> In a medical malpractice case, the plaintiff must prove that the treatment given was below the degree of care and skill expected of a reasonably competent practitioner and that the negligence proximately caused the injury or death. *Reams v. Stutler*, 642 S.W.2d 586 (Ky. 1982). A physician has the duty to use the degree of care and skill expected of a competent practitioner of the same class and under similar circumstances. *Grubbs ex rel. Grubbs v. Barbourville Family Health Ctr., P.S.C.*, 120 S.W.3d 682 (Ky. 2003); *Mitchell v. Hadl*, 816 S.W.2d 183, 185 (Ky. 1991); *Cordle v. Merck & Co., Inc.*, 405 F.Supp.2d 800 (E.D. Ky. 2005).

KRS 311.375(1) makes it clear that a person must have graduated from medical school and obtained an appropriate degree before referring to herself as a doctor:

> No person shall, in connection with the practice of medicine, surgery, osteopathy, optometry, dentistry, podiatry, pharmacy, chiropractic, psychology or psychiatry, nursing, anesthesiology, physio or physical therapy, or any other profession or business having for its purpose the diagnosis, treatment, correction or cure of any human ailment, condition, disease, injury or

infirmity, hold himself or herself out as a doctor or employ or use in any manner the title "Doctor" or "Dr.," unless he or she actually has graduated and holds a doctor degree from a school, college, university or institution authorized by its governing body to confer such degree.

And KRS 311.550(10) defines the "practice of medicine or osteopathy" as "the diagnosis, treatment, or correction of any and all human conditions, ailments, diseases, injuries, or infirmities by any and all means, methods, devices, or instrumentalities[.]"

The record establishes that Hatfield was still in medical school at the time of Thacker's procedure. In fact, Thacker states in her complaint that Hatfield was "a student enrolled at University of Pikeville's Kentucky College of Osteopathic Medicine training to become a medical doctor" at the relevant time. Thacker was not a medical intern or resident as Thacker asserted in her brief because she had not yet graduated. Because she was not yet a doctor, we agree with Hatfield that she could not form the special relationship with Thacker that would create a duty between them, as would be formed between a physician and a patient. Accordingly, Thacker cannot establish a *prima facie* case of medical negligence against Hatfield as a matter of law.

In addition, Hatfield argues that, as a matter of public policy, medical students who are under the direction of a physician should not be independently liable to a patient for medical malpractice. In support, she cites to the Supreme

Court of Kentucky's opinion in *Withers v. University of Kentucky*, 939 S.W.2d 340, 343 (Ky. 1997), in which that Court recognized that "[m]edical students and those in allied health sciences must have access to a sufficient number of patients in a variety of settings to insure proper training in all areas of medicine." Based upon our holding above, we need not reach this issue. But we also note that the setting of public policy in Kentucky is within the province of the Legislature, not the courts:

> It is beyond the province of a court to vitiate an act of the legislature on the ground that the public policy therein promulgated is contrary to what the court considers to be in the public interest. It is the prerogative of the legislature to declare what acts constitute a violation of public policy and the consequences of such violation. *Re Peterson's Estate*, 230 Minn. 478, 42 N.W.2d 59, 18 A.L.R.2d 910 [(1950)]. The propriety, wisdom and expediency of statutory enactments are exclusively legislative matters. *Hallahan v. Mittlebeeler*, Ky., 373 S.W.2d 726, 97 A.L.R.2d 215 [(1963)]. As so aptly stated in *Collison v. State ex rel. Green*, 9 W. W. Harr., Del., 460, 2 A.2d 97, 108, 119 A.L.R. 1422, 1437 [(1938)]:
>
> > '* * * it is the province of the legislature and not of the courts to pass upon matters of policy. The legislative hand is free except as the constitution restrains; and courts are bound by a most solemn sense of responsibility to sustain the legislative will in the appropriate field of its exercise, even though in the opinion of the judges as individuals the legislature had acted in an unwise manner.'

*Owens v. Clemons*, 408 S.W.2d 642, 645 (Ky. 1966). *See also Delahanty v. Commonwealth*, 558 S.W.3d 489, 508-09 (Ky. App. 2018).

For the foregoing reasons, the summary judgment of the Pike Circuit Court is affirmed.

MAZE, JUDGE, CONCURS.

TAYLOR, JUDGE, DISSENTS AND DOES NOT FILE SEPARATE OPINION.

BRIEF FOR APPELLANT:

Glenn Martin Hammond
Pikeville, Kentucky

BRIEF FOR APPELLEE ABIGAIL HATFIELD, D.O.:

Stephen S. Burchett
Michael G. Erena
Lexington, Kentucky